1999 UT App 136

Mark E. GRAHAM, Plaintiff, Appellant, and Cross-appellee,

v.

DAVIS COUNTY SOLID WASTE MANAGEMENT AND ENERGY RECOVERY SPECIAL SERVICE DISTRICT, the District's Administrative Control Board; and Legrand Bitter, the District's Executive Director, Defendants, Appellees, and Cross-appellant.

No. 980218–CA.

Court of Appeals of Utah.

April 29, 1999.

Jeffrey J. Hunt and R. Eric Smith, Parr, Waddoups, Brown, Gee, Loveless, Salt Lake City, for Appellant.

Larry S. Jenkins and Susan J. Mueller, Wood & Crapo, LLC, Salt Lake City, for Appellees.

Before GREENWOOD, Associate P.J., and DAVIS, and JACKSON, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Plaintiff Mark E. Graham appeals the trial court's grant of summary judgment, dismissing his complaint alleging the Davis County Solid Waste Management and Energy Recovery Special Service District (the District) violated Utah's Government Records Access and Management Act (GRAMA). *See* Utah Code Ann. §§ 63–2–101 to –906 (1997 & Supp.1998). The District cross-appeals the trial court's denial of its Motion to Dismiss or for Summary Judgment contending the trial court lacked jurisdiction. We affirm.

## BACKGROUND

¶2 On April 28, 1997, Graham sent a letter to the District asking that it give him various documents [1] to educate the members of Residents of Davis County Clear Air Committee (the Committee), a nonprofit organization to which Graham belonged. The District responded by letter dated May 7, 1997, informing Graham that the contract he had requested between the District and Rigo & Rigo Associates would be available to him upon payment of $2 in copying fees. The District also informed Graham that all other documents he requested, consisting of several hundred pages from various locations, would be made available to him only upon payment of copying fees as well as a $20 per hour compilation fee. In a letter to the executive director of the District, LeGrand Bitter (Bitter), Graham stated that under GRAMA, the District could not charge the $20 per hour compilation fee and asked that the District make the documents available to him between May 27 and June 10, 1997. Bitter responded that the documents would be available for review during the time period requested, but that the District intended to charge Graham the $20 per hour compilation fee under GRAMA. A subsequent letter from Bitter told Graham that, while there was no charge for inspecting the documents, any copying fees and $280 in compilation fees must be paid before Graham would be allowed to inspect the documents.

¶3 Pursuant to District Ordinance 92–C,[2] Graham appealed the $280 charge for staff time involved in compiling the requested documents, arguing that both GRAMA and Ordinance 92–C prohibited the District from charging Graham for staff time spent compiling the records. Bitter denied Graham's appeal, informing Graham that he had thirty days to file a written appeal with the District's Administrative Control Board (the

1. Graham's request for documents included:
   1. The current contract(s) between the Special Service District and Dr. H. Gregor Rigo and/or his firm, Rigo & Rigo Associates;
   2. Records relating to the stack test(s) conducted during January and/or February, 1997, namely:
       a. samples taken, journals, personal field notes, and inspection logs
       b. laboratory analysis of air samples taken
       c. any correspondence between the District and the entities responsible for gathering and/or analyzing and evaluating the air samples subsequent to the date of sampling
       d. memos or internal documents (within the Special Service District) relating to the stack test or the laboratory analysis
       e. any deviation or departure from the prescribed methods for gathering samples and their reason(s), or problems encountered during the sample gathering process

2. Ordinance 92–C provides, in pertinent part:
   Section 5—Public Right to Records
   A. Members of the public shall have the right to see, review, examine and take copies, in any format maintained by the District ....
   Section 10—Fees
   A. Applicable fees for ... requests under this Policy will generally be set at actual cost or as otherwise established by policies adopted under this Policy .... This District will charge the following fees for requests relating to the Government Record Access and Management Act.
   1. Reviewing a record to determine whether it is subject to disclosure ........................... No charge
   2. Inspection of record by person ... No charge
   3. Copy Fees .............. 25 cents per page
   4. ComputerDisk ...................... $5.00 (Plus overhead and time of District staff in preparation of information request billed at the rate of $20.00 per hour)
   5. Other Forms ................... Actual Cost (Plus overhead and time of District staff in preparation of information request billed at the rate of $20.00 per hour)
   6. Miscellaneous Fees .......... Actual Cost (Plus overhead and time of District staff in preparation of information request billed at the rate of $20.00 per hour)
   Section 11—Appeal Process
   A. Any person ... may appeal the determination within thirty calendar (30) days ... by filing a written appeal.
   ....
   C. The District Executive Director shall make a determination on the appeal within thirty business (30) days ....
   ....
   E. The person may file a written notice of appeal to the Administrative Control Board ....
   F. If the Administrative Control Board affirms the denial, ... the person may petition for judicial review in District Court as provided in [Utah Code Ann.] § 63–2–404.
   Davis County, Utah, Davis County Solid Waste Management and Energy Recovery Special Service District, Ordinance 92–C.

Board). Graham timely appealed to the Board which, after hearing argument from Graham, unanimously affirmed the denial.

¶ 4 On July 30, 1997, pursuant to Ordinance 92–C and section 63–2–404(2) of the Utah Code, Graham filed a complaint naming the Committee as plaintiff in Second District Court, alleging the District violated its own ordinance and GRAMA in charging him $20 per hour in compilation fees. *See* Utah Code Ann. § 63–2–404(2) (1997). The District's answer to his complaint alerted Graham to the fact that he could not file a complaint on behalf of the Committee. He therefore moved to amend the complaint, substituting himself as plaintiff. The District responded by filing a Motion to Dismiss or for Summary Judgment, arguing the court lacked jurisdiction to hear the case. The same day the District filed this motion, the trial judge granted Graham's request to amend the complaint. After receiving briefs from both parties on the jurisdictional issue, the trial court denied the District's Motion to Dismiss or for Summary Judgment. The court also granted Graham's request to amend the complaint and related the amended complaint back to the date of the original filing under Rule 15 of the Utah Rules of Civil Procedure.

¶ 5 Graham subsequently filed a Motion for Summary Judgment and the District responded by filing a Cross–Motion for Summary Judgment. The court granted the District's Motion for Summary Judgment, concluding the imposition of the $280 fee was proper under GRAMA. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 The District argues the trial court erred in allowing Graham to amend the complaint and relating the amended complaint back to the original filing date. We review the trial court's decision allowing Graham to amend the original complaint, substituting himself as plaintiff, for an abuse of discretion. *See Kasco Servs. Corp. v. Benson,* 831 P.2d 86, 92 (Utah 1992). However, whether the original complaint was void ab initio and would deprive the court of jurisdiction presents a question of law that we review without deference. *See Bonneville Bill-*

*ing v. Whatley,* 949 P.2d 768, 771 & 772 n. 3 (Utah Ct.App.1997).

■ ¶ 7 Graham argues the trial court erred in granting summary judgment in the District's favor on his claim that the District violated GRAMA by charging him a compilation fee in conjunction with his request for various District records. On appeal from a grant of summary judgment, we view the evidence in the light most favorable to the non moving party and affirm only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Drysdale v. Ford Motor Co.,* 947 P.2d 678, 680 (Utah 1997). In addition, the trial court's grant of summary judgment was based on an interpretation of GRAMA, presenting a question of statutory interpretation that we review under a correction-of-error standard. *See Jeffs v. Stubbs,* 970 P.2d 1234 (Utah 1998).

## ANALYSIS

### I. Jurisdictional Issue

¶ 8 The District argues the original complaint filed by the Committee was void because it violated both the Utah Assumed Name Statute, *see* Utah Code Ann. § 42–2–5(1) (1998), and the rule prohibiting an unincorporated association from being represented by a nonattorney. *See Life Science Church v. Shawano,* 221 Wis.2d 331, 585 N.W.2d 625, 627 (App.1998), *review denied,* 221 Wis.2d 656, 588 N.W.2d 633 (1998). The District also argues that because the original complaint was void and the amended complaint was not timely filed, the trial court lacked jurisdiction. *See* Utah Code Ann. § 63–2–404(2)(b)(i) (1997) (providing party seeking judicial review from records committee must file petition within thirty days after governmental entity has responded to request for records). In opposition, Graham contends that under Utah's liberal rules governing the amendment of complaints, the trial court properly allowed Graham to amend his complaint and related the amended complaint back to the original filing date.

¶ 9 In determining whether the Committee's original complaint was void, we address the threshold question of whether an unincorporated association may bring an action in the courts of this state. Because the history of an unincorporated association's ability to sue provides relevant background for our discussion, we first discuss the traditional rules governing an unincorporated association's ability to sue and statutory enactments that have changed the common law rules.

¶ 10 Although most jurisdictions traditionally allowed an unincorporated association to be sued, such organizations, absent specific statutory authority, were not recognized as legal entities and, as such, lacked the capacity to sue. *See Disabled Am. Veterans v. Hendrixson*, 9 Utah 2d 152, 155, 340 P.2d 416, 418 (Utah 1959) ("Under Rule 17(d) of the Utah Rules, an unincorporated association may be sued by its common name but no authority has been given for it to institute an action in such common name."); *see also Ionic Lodge # 72 F. & A.A.M. v. Ionic Lodge Free Ancient & Accepted Masons # 72 Co.*, 232 N.C. 252, 59 S.E.2d 829, 832 (1950) (stating unless given capacity to sue "by some pertinent statute, an unincorporated association has not the capacity to sue"), *rev'd on other grounds*, 232 N.C. 648, 62 S.E.2d 73, 75 (1950). Consequently, any legal action taken on behalf of an unincorporated association was considered a nullity. *See Oliver v. Swiss Club Tell*, 222 Cal.App.2d 528, 35 Cal.Rptr. 324, 330 (1963).

¶ 11 However, as unincorporated associations such as "social clubs, religious organizations, *environmental societies*, athletic organizations, condominium owners, lodges, stock exchanges and veterans," began to proliferate, courts recognize[d] that

the society of today rests upon the foundation of group structures of all types, such as the corporation, the cooperative society, [and] the public utility. Such groups must, of course, operate successfully within the society; one of the prerequisites to that functioning is, generally, liability to suit and *opportunity for suit*. To frustrate that viability by the imposition of outmoded concepts would be to impair the institu-

tions as well as to impede the judicial process.

*Barr v. United Methodist Church*, 90 Cal. App.3d 259, 153 Cal.Rptr. 322, 327 (1979) (quoting *Daniels v. Sanitarium Ass'n, Inc.*, 59 Cal.2d 602, 30 Cal.Rptr. 828, 381 P.2d 652 (1963))(emphasis added). As a result, many states, including Utah, enacted legislation or adopted rules giving unincorporated associations the power to sue. *See* Utah R. Civ. P. 17(d) advisory committee note (stating purpose of amendment to Rule effective September 1, 1991, was to "conform to the holding in *Cottonwood Mall Co. v. Sine*, 767 P.2d 499 (Utah 1988), which allows an unincorporated association to sue in its own name"); *Ionic Lodge*, 59 S.E.2d at 834 ("[I]t can hardly be questioned that if [an unincorporated] association might be sued in its common name . . ., it follows as a corollary conclusion that it has also the capacity to sue.").

■ ¶ 12 In keeping with these developments, Utah Rule of Civil Procedure 17(d) was amended to provide that

When two or more persons associated in any business either as a joint-stock company, a partnership or *other association, not a corporation, transact such business under a common name*, whether it comprises the names of such associates or not, *they may sue* or be sued by such common name.

(Emphasis added.) In this case, the Committee, as an unincorporated, voluntary environmental watch-dog association, falls within the purview of the "other association" language of Rule 17(d). Although Utah courts have not articulated a test to determine when a party is transacting business for purposes of Rule 17(d), *see Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996); *Hebertson v. Willowcreek Plaza*, 895 P.2d 839, 840 (Utah Ct.App.1995), we note that the Committee, apparently acting under a common name for several years in monitoring and working to improve air quality in Davis County, was likely engaged in transacting business. *Cf. Askew v. Joachim Mem'l Home*, 234 N.W.2d 226, 236 (N.D.1975) (holding voluntary charitable association was transacting business within state and as such could be sued); *J.M. & M.S. Browning Co. v.*

*State Tax Comm'n,* 107 Utah 457, 465, 154 P.2d 993, 996 (Utah 1945) (stating what constitutes transacting business must be determined within context in which phrase is used).

■ ¶ 13 Our determination that the Committee could properly file suit against the District under Rule 17(d) does not, however, end our inquiry into the jurisdictional issue. Although the Committee has the power to sue under Rule 17(d), it is nonetheless required, as the District correctly points out, to register as an association conducting business in Utah under an assumed name. *See* Utah Code Ann. § 42–2–5(1) (1998). That section provides, "[e]very person who carries on, conducts, or transacts business in this state under an assumed name, whether that business is carried on, conducted, or transacted as an individual, association, partnership, corporation, or otherwise, shall file with the Division of Corporations and Commercial Code . . . ." *Id.* The statute further provides that an entity conducting business under an assumed name that fails to comply with this section is barred from maintaining an action in any court of the state of Utah. *See* Utah Code Ann. § 42–2–10(1) (1998) (stating failure to comply with statute precludes filing action).[3] Because the Committee failed to register its name under this statute, it violated section 42–2–10(1).

■ ¶ 14 In addition to failing to comply with the Utah Assumed Name Statute, the filing of the original complaint by Graham on behalf of the Committee also violated the well-established rule that an unincorporated association, like a corporate entity, may not be represented by a nonlawyer. *See Life Science Church,* 585 N.W.2d at 627 ("Courts have denied unincorporated associations the right to appear in court without licensed legal counsel."); *see also In re Campaign for Ratepayers' Rights,* 137 N.H. 707, 634 A.2d 1345, 1350 (1993) (same). Therefore, in spite of the fact that the Committee was permitted under Rule 17(d) to file suit against the District, its complaint was defective as a

result of its violation of section 42–2–10(1) and because it was not represented by licensed legal counsel.

■ ¶ 15 Although the Committee's original complaint failed to comply with these requirements, we reject the District's argument that these deficiencies rendered the pleading a complete nullity so as to deprive the trial court of jurisdiction to consider the motion to amend the complaint. In other words, the Committee could have cured the deficiencies in the complaint by filing under the Utah Assumed Name Statute and by entering an appearance of counsel on its behalf. *See Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d 20, 23 (2nd Cir.1983) (giving non lawyer who filed complaint on behalf of corporation forty-five days to refile through licensed counsel); *Old Hickory Eng'g & Mach. Co. v. Henry,* No. 01–A–01–9410–CV–00463, 1995 WL 214295, at *3, 1995 Tenn App. LEXIS 231, at *6 (Tenn.Ct.App. Apr. 12, 1995) (rejecting argument that filing of complaint by nonlawyer on behalf of corporation rendered it void, stating it would be too harsh to hold filing of complaint void such that subsequent notice of appearance by counsel could not revive action, concluding original complaint was not void as a matter of law and later notice of appearance of counsel was sufficient to correct defect), *rev'd on other grounds,* 937 S.W.2d 782, 786 (Tenn. 1996).

■ ¶ 16 In this case, the Committee did not cure the defect in its complaint by complying with the Utah Assumed Name Statute or retaining licensed counsel to represent it; nevertheless, we conclude the substitution of Graham as plaintiff was a permissible means of remedying the deficiencies in the Committee's original complaint. This conclusion comports with Utah's liberal rules governing the amendment of pleadings. *See* Utah R. Civ. P. 15(a) (instructing trial courts that "leave [to amend pleadings] shall be freely given when justice so requires"); *Wilcox v. Geneva Rock Corp.,* 911 P.2d 367, 369 (Utah 1996) (interpreting Rule 15(a) "consistently

---

**3.** Rule 17(d) and sections 42–2–5(1) and 10(1) refer to "transact[ing] business," and would logically define that term similarly so that one qualified to sue under the rule would be required to register under the assumed name statute. *See* Utah Code Ann. § 42–2–5(1), 10(1) (1998); Utah R. Civ. P. 17(d).

with the liberal pleading practices mandated by rule 8 of the Federal Rules of Civil Procedure").[4]

¶ 17 Having concluded that substituting Graham as plaintiff in the amended complaint was sufficient to cure defects in the original complaint, we next address whether it was proper for the trial court to relate the amended complaint back to the date of the original filing, rendering it timely under section 63–2–404(2)(b)(i). Rule 15(c) of the Utah Rules of Civil Procedure provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R. Civ. P. 15(c). Further, the Utah Supreme Court has held that pleadings may be amended and related back to the date of the original filing as long as parties in an action have been given notice of the claims against them and an opportunity to respond. *See Wilcox,* 911 P.2d at 369–70. " 'What [the] parties are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required.' " *Id.* at 369 (quoting *Cheney v. Rucker,* 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963)). Finally, a court may relate an amended complaint back to the date of the original filing only "when new and old parties have an identity of interest; so it can be assumed or proved the relation back is not prejudicial." *Id.* (quoting *Doxey–Layton Co. v. Clark,* 548 P.2d 902, 906 (Utah 1976)).

¶ 18 In this case, allowing Graham to substitute himself as plaintiff in place of the Committee did not impair the District's opportunity to respond to the claims against it. The amendment merely changed the plaintiff's status as an entity to an individual "without changing the ultimate liability sought to be imposed." *Kerney, II v. Fort Griffin Fandangle Assoc., Inc.,* 624 F.2d 717, 720 (5th Cir.1980). Furthermore, the District was not prejudiced by "the delay be-

tween the original and amended pleadings." *Id.* There was a sufficient identity of interest between the Committee and Graham to justify relation back of the amended complaint. We therefore conclude the trial court neither abused its discretion, nor erred as a matter of law, in allowing Graham to amend the original complaint, substituting himself as plaintiff, and relating the amended pleading back to the date of the original filing.

## II. GRAMA

¶ 19 We next address whether, under GRAMA, the District was entitled to judgment as a matter of law. GRAMA provides in pertinent part:

63–2–201. Right to inspect records and receive copies of records.

(1) Every person has the right to inspect a public record free of charge, and the right to take a copy of a public record during normal working hours, subject to Sections 63–2–203 and 63–2–204.

. . . .

63–2–203. Fees.

(1) A governmental entity may charge a reasonable fee to cover the governmental entity's actual cost of duplicating a record

. . . .

(2) When a governmental entity *compiles a record in a form other than that normally maintained by the governmental entity,* the actual costs under this section may include the following:

(a) the cost of staff time for summarizing, compiling, or tailoring the record either into an *organization or media* to meet the person's request;

(b) the cost of staff time for search, retrieval, and other direct administrative costs for complying with a request.

Utah Code Ann. §§ 63–2–201, –203 (1997) (emphasis added).

¶ 20 The District argues that under the plain meaning of section 63–2–203(a) and (b),

---

4. The District argued at oral argument that *Haro v. Haro,* 887 P.2d 878 (Utah Ct.App.1994), controls this case. We disagree. In that case, we held that the original complaint was a nullity—such that the complaint could not be amended—

because the party that filed the original complaint lacked capacity to bring the action. *Id.* at 880. In contrast, the complaint in this case, although technically deficient, was not filed by a party lacking the capacity to sue.

it is authorized to charge Graham $20 per hour for compilation of the records he requested. Graham counters that the statute's plain meaning prohibits the imposition of such fees because he did not request the documents in a form other than that normally used by the District. Graham also contends that imposing such a fee unreasonably restricts his access to public documents in derogation of the legislative intent in enacting GRAMA.

▇▇ ¶ 21 According to standard rules of statutory construction, Utah appellate courts first look to a statute's plain meaning in discerning legislative intent. *See Johnson v. Redevelopment Agency,* 913 P.2d 723, 727 (Utah 1995); *Hansen v. Hansen,* 958 P.2d 931, 934 (Utah Ct.App.1998). "To that end, a statute should be construed as a comprehensive whole, not in a piecemeal fashion." *Field v. Boyer Co., L.C.,* 952 P.2d 1078, 1085 (Utah 1998) (Stewart, J., dissenting) (citing *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 (Utah 1991)).

¶ 22 In enacting GRAMA, our Legislature has balanced the public's right to access government documents against the government's interest in operating free from unreasonable and burdensome records requests. Accordingly, GRAMA recognizes the importance of public access to governmental records. *See* Utah Code Ann. § 63–2–102(1)(a) (stating Legislature recognizes "the public's right of access to information concerning the conduct of the public's business"). However, GRAMA also limits access to public records in several circumstances, including situations in which there is "a public policy interest in allowing a government to restrict access to certain records ... for the public good." *Id.* § 63–2–102(2). Access to public records is also limited to "reasonable access," and the Legislature has allowed restrictions on the public's access to records when the "public interest in allowing restrictions on access to records may outweigh the public's interest in access." *Id.* § 63–2–102(3)(a)–(b).

¶ 23 In the context of this case, the Legislature has also restricted access to public records by allowing agencies to impose fees for the production of records in limited instances. Although the Legislature has man-

dated "easy" access to public records, *see id.* § 63–2–102(3)(a), it has also attempted to prevent public agencies from becoming overwhelmed by time-consuming and burdensome records requests by allowing government agencies to charge for the production of records under certain circumstances. *See id.* §§ 63–2–201 to –203. For example, section 63–2–201(8)(b)(i) requires a governmental entity to provide records in a particular format only if "the governmental entity is able to do so without unreasonably interfering with the governmental entity's duties and responsibilities; and ... the requestor agrees to pay the governmental entity for its costs incurred in providing the record in the requested format in accordance with Section 63–2–203." Utah Code Ann. § 63–2–201(8)(b)(i) (1997). GRAMA also allows a governmental entity to charge for the actual cost of duplicating a record as well as for staff time used in compiling records in a form other than that used by the agency. *See id.* § 63–2–203(1)–(2).

▇▇ ¶ 24 Consistent with the plain meaning of the statute and given this statutory context, we must determine the meaning of the phrase "compile a record in a form other than that normally maintained by the governmental entity" as contained in section 63–2–203(2). "Compile" is defined in Webster's Third New International Dictionary (1986) as "to collect and assemble (written material or items from various sources) into a document or volume or a series of documents or volumes." *Id.* at 464. "Form" is defined as "orderly arrangement or method of arrangement." *Id.* at 892. These definitions are more expansive than those urged by plaintiff, which would limit the ability to charge a fee to only those circumstances when the medium of the record is changed.

¶ 25 A recent Iowa decision appears particularly relevant to our analysis. There, the court stated:

Fourteen states and the District of Columbia provide that the cost of searching for and retrieving records may be included in copy fees. These states include Alaska, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

Rhode Island, Utah, Virginia and Wisconsin. . . . [Under the statutory scheme, w]e find . . . the legislature's intent that a lawful custodian has the authority to charge a fee to cover the costs of retrieving public records. Thus, access to public records does not necessarily mean "free" access. We recognize that permitting [public] entities . . . to charge members of the public a fee to cover the cost of retrieving public records does, to some extent, limit public access to public records. While the legislature did not intend for [the public records law] to be a revenue measure, at the same time it did not intend for a lawful custodian to bear the burden of paying for all expenses associated with a public records request. [In addition, the fee charged] is reasonable in light of [the] broad request for "all working papers, correspondence and documentation regarding the Administrative Structure Review Team." . . . [Finally,] the [requested documents] pertaining [to the] request consisted of notes and papers from numerous school district employees. Gathering these documents thus involved more than just searching for papers in a file cabinet. . . . .

We conclude . . . a public body . . . may charge members of the public a retrieval fee associated with a public records request . . . , but must be *reasonable in light of the circumstances surrounding the request.*

*Rathmann v. Board of Dirs. of Davenport Comm. Sch.,* 580 N.W.2d 773, 778 n. 5 & 778–80 (Iowa 1998) (citations omitted & emphasis added).

¶ 26 In keeping with the purposes of GRAMA and maintaining the balance between the public's right to access and government's interest in operating efficiently, we conclude that, under section 63–2–203(2), governmental entities may not charge for merely assembling documents. That is, an agency may not charge for a request under section 63–2–203(2) if the agency is only required to retrieve a single document or set of documents from a readily available source and provide them to the requestor for inspection. An agency may, however, assess fees in conjunction with a record request that involves extracting materials from a larger document or source and compiling them in a different form. In other words, if an agency is required to do more than simply retrieve and make available a record in its original form, then the agency may charge a compilation fee for its production.

¶ 27 However, the right of government agencies to assess these types of fees is not absolute. The government bears the burden of establishing the necessity of "compiling" the records in a manner so as to justify the charging of fees to the public. If a records request involves the assembly of documents in a different medium or organization, the agency should, if appropriate under sections 63–2–302 to 304, allow the requestor to avoid compilation charges by offering the requestor the option of searching for and retrieving the documents him or herself. Moreover, if the requestor could have retrieved the documents him or herself, but the agency chooses to instead compile and produce the records itself, the agency may not then impose fees pursuant to section 63–2–203. Finally, we suggest that sound public policy requires an agency, prior to compiling records and imposing a fee, to inform the requestor that fees will be assessed and, if so desired, allow the requestor to modify or withdraw the request based on this information.

¶ 28 In sum, a governmental agency may assess compilation fees in conjunction with a request for records only if: (1) a request specifies that the documents be compiled in a form other than that used by the agency and the requestor consents to the imposition of compilation fees; or (2) the request, without specifying that the records be compiled in a form other than that maintained by the agency, nonetheless requires the agency to extract materials from a larger document or source and it is not feasible or reasonable to allow the requestor to compile the records. Finally, to protect the public's right to access public records, we conclude that when a request for public records does not specify that the records be compiled in a form other than that used by the agency, the burden is on the agency to show that it is

impossible to allow the requestor to obtain the records on his or her own and that compliance with the request requires the compilation of the records in a form other than that maintained by the agency.

■ ¶ 29 We turn now to the trial court's findings of fact regarding the District's compilation of the records requested by plaintiff.[5] The pertinent findings of fact state:

17. That because of the variety of records involved in accommodating Mr. Graham's request, the District could not and did not store them in one document, computer program, or central file;

18. That the District had to take files, documents, and data from several sources and organize them in order to respond to Mr. Graham's request;

19. That the District made a thorough search of all files and records related to the testing to insure that the District produced everything relevant;

20. That in order to do so, it was necessary for the District to contact those people who may have been involved in the testing at issue and obtain their assistance;

21. That John Watson, Bart Baker, certain operators and maintenance personnel, and Jack Schmidt searched, retrieved, and compiled the records requested by Mr. Graham. Collectively, they spent a total of 14 hours;

22. That the District retrieved and compiled information from District files located at individual employees' work station, daytimers, operator logs, testing protocols, general District files that may relate to testing, and a computer database;

23. That research on the computer database was a time-consuming process. The database is continually updated, and after a period of time, information stored in the database is downloaded to tape. Some of the information Graham requested has been stored on tape, requiring an operator to peruse the computer and tapes to locate and print hard copies of the information plaintiff requested;

24. That the District assessed plaintiff a $280.00 fee based on the 14 hours actually expended for the several searches by the District staff[.]

¶ 30 As the trial court noted, Graham disputed neither the hours worked nor the rate charged. We conclude, as did the trial court, that the charge was reasonable and that the undisputed facts comport with the statutory language allowing a fee to be assessed for compiling records in a form other than that normally maintained by the agency. Additionally, because Graham did not prevail below or on appeal, he is not entitled to attorney fees.

## CONCLUSION

¶ 31 Any deficiencies in the original complaint were effectively cured by substituting Graham as plaintiff in the amended pleading. Also, because the District was not prejudiced by the trial court's decision to allow Graham to amend the complaint, the court did not abuse its discretion in relating the amended pleading back to the date of the original filing.

¶ 32 In responding to a request for records, a public agency may impose a compilation fee only when the request specifies or requires the agency to extract documents from a larger source, or to change the records' medium or organization. In addition, the agency should inform a requestor, prior to compiling records, that a compilation fee will be imposed, and, if appropriate, allow the requestor an opportunity to avoid the fee by searching for and retrieving the documents without the agency's assistance. In this case, the trial court's findings support the conclusion that in responding to Graham's request for records, the District was required to compile the documents in a form other than that maintained by the District. Accordingly, we affirm the trial court's grant of summary judgment in favor of the District and deny Graham's request for attorney fees.

¶ 33 JAMES Z. DAVIS, Judge and NORMAN H. JACKSON, Judge, concur.

---

**5.** These findings are undisputed in all material aspects.