# IN THE COURT OF APPEALS OF IOWA

No. 24-0650
Filed July 23, 2025

**UNBRIDLED SPIRITS THOROUGHBRED RETIREMENT RANCH, INC.,**
Plaintiff-Appellant,

**vs.**

**CARL J. RIECHERS and ELIZABETH A. RIECHERS,**
Defendants-Appellees.

_____

Appeal from the Iowa District Court for Johnson County, Lars G. Anderson (counterclaim default judgment, order regarding counsel) and Chad Kepros (motion for exception, motion to dismiss, motion for additional time), Judges.

A nonprofit organization appeals the district court ruling dismissing its claims. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

Guy P. Booth, Cedar Rapids, for appellees.

Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

We recently remarked that proceeding in a lawsuit "without the assistance of an attorney is perilous." *Locher & Davis, PLC v. Ruth F. Woller Revocable Tr.*, No. 23-0944, 2024 WL 4761531, at *1 (Iowa Ct. App. Nov. 13, 2024). In the case before us, proceeding without an attorney proved fatal to the appellant's claims.

Unbridled Spirits Thoroughbred Retirement Ranch, Inc. (Unbridled) appeals the district court ruling dismissing its claims brought against Carl and Elizabeth Riechers for failure to obtain counsel. On appeal, Unbridled argues the district court incorrectly concluded that a nonprofit corporation cannot be represented by a non-attorney employee in a civil action. Thus, it argues its claims were improperly dismissed. Additionally, Unbridled contends the district court erred by dismissing its claims with prejudice.

Upon our review of the record, we affirm the district court's ruling dismissing Unbridled claims for failure to obtain counsel. However, we conclude the district court erred by dismissing Unbridled's claims with prejudice.

I.      **Background Facts and Proceedings**

Unbridled is a 501(c)(3) nonprofit corporation that provides shelter and care for retired thoroughbred racehorses. In November 2020, the organization agreed to lease nearly twenty-five acres of land from the Riechers to house additional retired racehorses. Under the purported terms of the lease agreement with the Riechers, Unbridled agreed to make monthly rental payments of $1475, pay the utilities for the property, suitably dispose of horse manure that accumulated on the property, and be responsible for any damage to the property. Unbridled described the lease agreement as a "lease-to-Purchase" agreement, while the Riechers

contended the agreement only contained a right of first refusal to purchase the property.

The relationship between Unbridled and the Riechers started off on a good note but quickly began to deteriorate. Unbridled accused the Riechers of consistently attempting to alter the terms of the lease agreement. Conversely, the Riechers accused Unbridled of failing to make rental and utility payments and to maintain the property in an appropriate fashion. In April 2021, the Riechers gave Unbridled notice that it intended to terminate the lease—a decision motivated by the Riechers's desire to sell a portion of the property leased by Unbridled. The notice of termination provided that the lease would terminate on March 1, 2022.

But according to the Riechers, Unbridled remained on the property following the termination of the lease. The Riechers subsequently filed a forcible entry and detainer (FED) action to remove Unbridled from the property. In an attempt to prevent the FED action from moving forward, Unbridled filed a petition for an injunction and relief pursuant to Iowa Code chapter 560 (2024) on March 16. *See* Iowa Code § 560.1 (providing that "where an occupant of real estate has color of title thereto and has in good faith made valuable improvements" to the property, "no execution shall issue to put the owner of the land in possession of the same . . . until the provisions of this chapter have been complied with"). Unbridled's petition asserted that the organization had made numerous improvements to the Riechers' property and had not been compensated for such improvements. Additionally, the petition requested that the Riechers be enjoined from removing Unbridled from the property "until a suitable property of equal value [could] be obtained."

Of relevance to this appeal, the petition was filed by Christina Norris—Unbridled's executive director—on behalf of the organization. Norris is not an attorney. Within two weeks of the petition being filed, the Riechers filed a combined answer and counterclaim. As a part of their counterclaim, the Riechers asserted that Unbridled "committed injury to the real estate" by—among other things—removing "a portion of [a] permanent fence" on the property, "fail[ing] to remove manure in compliance with the terms of the lease and the Department of Natural Resources state regulations," and "fail[ing] to maintain the premises in a safe and proper manner." The Riechers requested a judgment against Unbridled to compensate them for damage done to the property and for "past due and unpaid rent and utility bills."

On April 14, the district court sua sponte entered an order instructing Unbridled to obtain counsel. In its order, the district court stated:

> [T]he bigger problem at this time is that Ms. Norris is proceeding as the Plaintiff's representative in this matter. The Iowa Supreme Court has adopted "the general rule that a corporation may not represent itself through nonlawyer employees, officers, or shareholders." The Court has reviewed the database of attorneys maintained by the Iowa Supreme Court and available for public review at www.iowacourts.gov, and it does not appear Ms. Norris is licensed to practice law in Iowa. Therefore, she may not represent Plaintiff in this action. Within twenty (20) days of the date of this Order, Plaintiff shall secure counsel to represent it in this action, with new counsel to file an appearance within this twenty day time period. If no counsel appears for Plaintiff within twenty (20) days of the date of this order, the matter may be dismissed *without prejudice*, at Plaintiff's cost, and without further notice to the parties.

(Emphasis added) (citation omitted). In response to the district court's order, Unbridled filed a motion on May 3 for an extension of time to obtain counsel. Of note, this motion was filed by Angela Buchhop—Unbridled's executive chief

operations officer. Like Norris, Buchhop is not an attorney. The district court denied Unbridled's motion for an extension of time, writing:

> The Court is made aware of the Plaintiff's request for an extension that is filed by Angela C. Buchhop. Ms. Buchhop is not an attorney and is not allowed to file motions on behalf of the Plaintiff as a result. Furthermore, this Petition was filed by Plaintiff and it appears was done without having obtained counsel to pursue this action. Consequently, the Court may not address the motion for extension as a result.

In the same order, the district court warned Unbridled to obtain counsel as soon as possible to avoid having its claims dismissed without prejudice. On May 4, the day the district court's twenty-day deadline was set to expire, attorney Stephanie Hinz filed an appearance on behalf of Unbridled. Additionally, on June 13, attorney Jennifer Zahradnik filed an appearance for Unbridled. Hinz subsequently withdrew as counsel on September 6.

After Unbridled secured counsel, the case proceeded normally until December 2023. However, on December 13, Zahradnik filed a motion to withdraw as counsel. In her motion to withdraw, Zahradnik asserted Unbridled "breached the attorney fee contract by nonpayment of attorney fees." The district court subsequently entered an order approving Zahradnik's withdrawal. As part of the order approving Zahradnik's withdrawal, the district court directed Unbridled to "secure alternate counsel within twenty (20) days of the date of this order." A few weeks later, the district court entered another order, writing:

> On this date, the Clerk of the Court has referred this matter to the undersigned for review, following entry of the Court's December 13, 2023 Order. No alternate counsel has appeared for Plaintiff. As a corporate entity, Plaintiff may not represent itself through nonlawyer employees, officers, or shareholders. If no counsel appears for Plaintiff on or before January 24, 2024, Defendants may move for dismissal of the action, at Plaintiff's cost.

(Citation omitted.) A day before the district court's January 24 deadline, Unbridled—through Norris—filed a motion to extend requesting additional time to obtain counsel. In the motion to extend, Unbridled alleged it had made "due diligence to obtain counsel before the required due date, but we have been met by multiple denials either because the attorney's case load'[s] are too heavy, no one is experienced with this type of case, or they want an excessive retainer (upwards of $25,000.00 or more)." The district court granted the motion and gave Unbridled until February 13 to secure alternate counsel and have such counsel file an appearance. Additionally, the district court wrote that, "[d]ue to the approaching April 2, 2024 trial date, the Court is unlikely to grant any further extensions, absent a showing of extraordinary circumstances by Plaintiff."

However, Unbridled was unable to secure alternate counsel. On February 10, Unbridled filed a request "for an exception to the General Rule and [to] represent itself Pro SE by a nonlawyer officer." The district court denied this request, stating, "[n]o such exception is available under the law. As a corporate entity, Plaintiff is not permitted to represent itself through nonlawyer employees, officers, or shareholders." On February 14, the Riechers filed a motion to dismiss due to Unbridled's failure to secure counsel. In their motion to dismiss, the Riechers also requested that a separate hearing be set for their counterclaim.

In an order granting the Riechers's motion to dismiss, the district court wrote:

> Plaintiff has been informed repeatedly that it must have counsel represent it in this action due to its corporate status. No counsel has appeared for Plaintiff, and on February 14, 2024, Defendants filed a Motion to Dismiss Plaintiff's claims on grounds that Plaintiff has not

had counsel appear for it.  On February 23, 2024, Plaintiff requested additional time to secure counsel.  Given that trial is only about a month away, the Court finds that no further extensions should be granted to Plaintiff to secure counsel.  Plaintiff has had ample opportunity to secure counsel, and has not done so.  Plaintiff may not proceed with its claim by representing itself.  Therefore, Defendants' February 14, 2024 Motion to Dismiss should be and is granted, and Plaintiff's February 23, 2024 request for additional time to secure counsel is denied.  Plaintiff's claims against Defendants are *dismissed with prejudice*. Defendants' Counterclaim remains set for trial on April 2, 2024.

(Emphasis added.)

Following the dismissal of its claims, Unbridled did not secure counsel to defend against the Riechers's counterclaim.  On March 29, the district court entered an order rescheduling trial for April 4 on Riechers's counterclaim.  In the order, the district court noted:

[T]here still is no attorney of record for Plaintiff.  That being the case, the Court finds that Plaintiff should be given a date certain by which to have counsel file an appearance.  If counsel does not file an appearance by that date and time, Plaintiff will be found in default on Defendants' counterclaim and the matter will then proceed to a default hearing to determine damages.

The district court set a deadline of April 2 for Unbridled to secure counsel. Unbridled subsequently filed a motion to continue trial on the Riecher's counterclaim, but the district court took no action on this motion because it was filed by Norris.  Ultimately, Unbridled was unable to secure counsel by the district court's deadline, and the district court entered an order finding the organization in default on the Riecher's counterclaim.  As the district court mentioned in its March 29 order, the scheduled trial for the Riechers's claim was converted to a default hearing to determine damages.  Following the hearing, a judgment was entered in favor of the Riechers for $184,682.

This appeal followed.

## II.     Standard of Review

"Our standard of review for a district court's ruling on a motion to dismiss is for correction of errors at law."  *Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016).

## III.    Analysis

### A. Dismissal of Claims

In *Hawkeye Bank and Trust*, *National Ass'n v. Baugh*, our supreme court held that a corporate entity generally may not be represented in a civil action by a non-attorney employee.  463 N.W.2d 22, 25 (1990) ("We therefore adopt the general rule that a corporation may not represent itself through nonlawyer employees, officers, or shareholders.").  Unbridled does not challenge that holding in this appeal.  Instead, it argues the holding should not be extended to nonprofit entities because of the inherent differences between such entities and corporations.  In other words, Unbridled contends the logic of the supreme court's reasoning in *Hawkeye Bank* is inapplicable to nonprofit entities.  Thus, it asks us to carve out an exception to the general rule announced in *Hawkeye Bank* and permit nonprofit entities to be represented by non-attorney employees or officers.  And because the district court concluded that nonprofit entities could not be represented by non-attorney employees or officers, it asserts its claims were improperly dismissed.  However, we concur with the district court and decline to carve out an exception permitting nonprofit entities to be represented by non-attorney employees, officers, or members.

In *Hawkeye Bank*, Terry Baugh—the president and shareholder of a closely held corporation—attempted to represent a corporation in an action to set aside alleged fraudulent conveyance made to the corporation. 463 N.W.2d at 23. In denying Baugh—a non-attorney—the ability to represent the corporation, the supreme court provided two primary justifications. *Id*. 24–25. First, the court noted that courts have almost universally "striven to preserve the corporation as a legal entity separate from its shareholders." *Id*. at 24. Later on in its analysis, the court's reasoning crystallized the importance of recognizing the separate legal statuses of the corporation and its shareholderds:

> Given this record, Baugh cannot support a claim that only his financial interests are at stake. Although he purports to speak for his sister/shareholders in this matter, the record is devoid of any suggestion that their views or financial interests mesh with either Baugh's or the corporation's. This circumstance clearly distinguishes the present case from those cases relied upon by Baugh in which courts have carved out exceptions to the general rule.
> Moreover, the very nature of this litigation puts the status of the shareholders and corporation at issue and, possibly, in conflict. It is the transfer of assets between Baugh family members and the corporation that Hawkeye Bank seeks to challenge.

*Id*. at 25.

Unbridled asserts "[t]his rationale, of a potential conflict between the financial interests of the shareholders, does not apply in the context of a nonprofit entity." It contends a "nonprofit entity does not have shareholders or persons who have an ownership interest in the entity." Thus, it believes the reasoning underpinning *Hawkeye Bank* does not apply to nonprofit entities.

It is true that a nonprofit employee does not have an equity interest in the organization like a shareholder does in a corporation. But this does not necessarily

mean the financial interests of a nonprofit's employees and officers are aligned with the entity's. Furthermore, we believe Unbridled's argument on this point is too tenuous. While the rationale of *Hawkeye Bank* on this point focused on potential financial conflicts of interest between shareholders and the corporate entity, its logic is not limited to *only* that type of conflict of interest. There are a variety of conflicts of interest that may make it inappropriate for an employee or officer of a corporate entity to represent it in court. As one of our sister jurisdictions put it:

> A corporation must be represented by counsel in legal proceedings. This rule arises from the fact that a corporation is an artificial entity that must always act through agents and there may be questions as to whether a particular person is an appropriate representative. For example, while an officer of a corporation, *i.e.*, an individual such as Van Tholen, may believe review of an administrative decision is in the best interests of a company, it may, in fact, not be. The interests of the corporate officers and that of the corporation, a distinct legal entity, are separate. It is not every case where the views or interests of a principal and the corporation mesh. By requiring an attorney to represent a corporation in legal proceedings, this problem is mitigated.

*Downtown Disposal Servs.*, *Inc. v. City of Chicago*, 979 N.E.2d 50, 54 (Ill. 2012) (internal citations omitted). We conclude this was the underlying rationale of *Hawkeye Bank*, and we see no reason why it should not be extended to nonprofit entities.

Second, the court in *Hawkeye Bank* also expressed concern about the ethical and practical considerations of allowing non-attorney employees, officers, or shareholders to represent corporations in civil actions. *See* 463 N.W.2d at 24 ("[I]t is thought that the rule protects the court and the public from ineptitude and delay at the hands of persons who are unskilled as well as unlicensed in the

practice of law."). As our neighbors to the north noted, the ethical considerations of this issue are especially important:

> Were it possible for corporations to prosecute or defend actions in person, through their own officers, men unfit by character and training, men, whose credo is that the end justifies the means, disbarred lawyers or lawyers of other jurisdictions would soon create opportunities for themselves as officers of certain classes of corporations and then freely appear in our courts as a matter of pure business not subject to the ethics of our profession or the supervision of our bar associations and the discipline of our courts.

*Nicollet Restoration, Inc. v. Turnham*, 486 N.W.2d 753, 755 (Minn. 1992) (citation omitted). To permit employees or officers of a corporation to represent corporate entities would invite the unauthorized practice of law.

However, Unbridled contends these concerns can be mitigated. It contends our courts have "tools to manage unprofessional behavior." It asserts Iowa's district court judges are "excellent at redirecting non-lawyer litigants when they stray into the irrelevant. When the other side is represented by a lawyer, that lawyer can assist by making appropriate objections." Additionally, Unbridled claims, "[i]f matters get too far out of hand, the trial judge has the power to hold an obstructive litigant in contempt of court."

But we are not persuaded that the so-called "tools" Unbridled references sufficiently mitigate important ethical and practical concerns of permitting corporations or nonprofit organizations to be represented by non-attorney employees or officers. The "tools" Unbridled refers to were available in 1990—the year *Hawkeye Bank* was decided. If our supreme court believed such "tools" adequately addressed the practical and ethical considerations on this issue, we believe it would have stated so. But it did not. Thus, we see no reason why such

concerns are not also applicable to non-attorney nonprofit employees or officers attempting to represent their organizations.

Furthermore, we note that numerous courts—both state and federal—have concluded that nonprofit entities may not be represented by non-attorney employees or officers in court.  *See Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 309 (Minn. 2005) (noting nonprofit entities must be represented by an attorney in legal proceedings); *see also Brattman v. Sec'y of Commonwealth*, 658 N.E.2d 159, 161 (Mass. 1995) (concluding a nonprofit officer who was not an attorney could not represent the organization in a legal proceeding); *People for Cmty.*, *Inc.* v. *City of Fort Wayne Neighborhood Code Compliance*, 198 N.E.3d 19, 25 (Ind. Ct. App. 2022) (concluding the district court did not err in dismissing a nonprofit's claim where the nonprofit was represented by a non-attorney agent); *Free Church of Tonga-Kona v. Ekalesua Ho'ole Pope O Kekaha*, No. CAAP-19-0000005, 2019 WL 2285359, at *2 (Haw. Ct. App. May 28, 2019) ("The same laws barring a non-attorney from representing another natural person, a corporation, a partnership, a trust, or limited liability company would also bar a non-attorney from representing a non-profit association."); *cf. Spirit of the Avenger Ministries v. Commonwealth*, 767 A.2d 1130, 1131 (Pa. Super. Ct. 2001); *Graham v. Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.*, 979 P.2d 363, 369 (Utah Ct. App. 1999); *Life Sci. Church, Bible Camp & Christian Liberty Acad. v. Shawano Cnty.*, 585 N.W.2d 625, 333–34 (Wis. Ct. App. 1998); *Nato Indian Nation v. Utah*, 76 F. App'x 854, 856 (10th Cir. 2003); *Strong Delivery Ministry Ass'n v. Bd. of App. of Cook Cnty.*, 543 F.2d 32, 34 (7th Cir. 1976).

For these reasons, we conclude the holding of *Hawkeye Bank* should be applied equally to nonprofit entities.[1]  Accordingly, the district court did not err by dismissing Unbridled's claims for failure to obtain representation by a licensed attorney.[2]  Nor did it err in refusing to allow Unbridled to be represented by a non-attorney in the Riechers's counterclaim that resulted in a default judgment.[3]  We

---

[1] We do not analyze the appellant's argument analogizing tribal sovereignty to non-profit status for two reasons: (1) because of the lack of any authority supporting such analogy, *see* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."), and (2) because of the divergent nature of the two.  To the latter, indigenous tribes are treated as sovereign nations in most respects.  *See In re N.N.E.*, 752 N.W.2d 1, 12 (Iowa 2008) ("An Indian tribe's status is a distinctive combination of sovereignty and dependency—it is at once an independent nation and a ward of the state.").  Meanwhile, the primary reason a non-profit entity is treated different than a for-profit entity is for purposes of determining taxation as a result of their differing profit motives, *see* Iowa Code § 422.34 (exempting entities "described in section 501 of the Internal Revenue Code" from taxation), which is irrelevant when considering the purposes of requiring attorney representation.

[2] We believe the district court's decision to dismiss Unbridled's claims were justified.  The Iowa Rules of Civil Procedure provide that "[a] party may move for dismissal of any action or claim against the party . . . if the party asserting it fails to comply with the rules of this chapter or any order of the court."  Iowa R. Civ. P. 1.945.  Here, Unbridled repeatedly failed to comply with numerous district court orders directing it to obtain counsel.  Furthermore, this approach is consistent with how we have treated this issue at the appellate level.  *See Timberline Builders, Inc. v. Donald D. Payne Tr.*, No. 09-0168, 2010 WL 2383916, at *5 (Iowa Ct. App. June 16, 2010) (striking an appellant corporation's brief for failure to be represented by counsel and granting additional time for the corporation to obtain counsel).

[3] In its appellate brief, Unbridled, in passing, requests that we reverse the district court's entry of a default judgment.  But the only argument that Unbridled arguably makes for reversal is that it should have been able to proceed represented by its non-attorney employee.  Because that argument fails and any other claim of error is waived, we affirm the default judgment.  *See In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) ("We re-affirm that 'random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.'" (alteration in original) (citation omitted)).

applaud the district court for its patience in giving Unbridled multiple opportunities at various stages of the litigation to obtain counsel.[4]

### B. Dismissal with Prejudice

Unbridled also argues that the district court erred by dismissing its claims with prejudice. It asserts any dismissal should have been without prejudice. It notes its claims were dismissed "solely because Unbridled . . . did not have an attorney. It adds that this deficiency "could be readily corrected" by refiling its claims through an attorney. We agree with Unbridled for two reasons.

To begin our analysis on this issue, we start with some basic principles. "A dismissal with prejudice is a means of declaring that there has been an adjudication on the merits." *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 8 (Iowa 2005). An adjudication on the merits of a claim will bar that claim from being asserted against the same party in future litigation. *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998). And our rules of civil procedure provide "all dismissals not governed by rule 1.943 or not for want of jurisdiction or improper venue, shall operate as adjudications on the merits unless they specify otherwise." Iowa R. Civ. P. 1.946.[5]

At first blush, it may seem that the district court correctly dismissed Unbridled's claims with prejudice. After all, its claims were involuntarily dismissed. Thus, arguably its claims should have been dismissed with prejudice. *See id.* But

---

[4] *See Hawkeye Bank*, 463 N.W.2d at 26 (concluding the district court abused its discretion when it did not afford a corporation an opportunity to secure licensed counsel before proceeding with its case).

[5] Iowa Rule of Civil Procedure 1.943 deals exclusively with voluntary dismissals. Thus, it would be inapplicable in this case because Unbridled's claims were *involuntarily* dismissed.

as mentioned above, two reasons lead us to conclude that the dismissal of Unbridled's claims should have been without prejudice.

First, the defect in this case was that Unbridled filed a petition through a non-attorney employee and was not subsequently represented by counsel throughout most of the proceedings. However, this defect could easily be cured by permitting Unbridled to refile a petition if it were to secure counsel in the future. Litigants are typically given opportunities to remedy such defects. *See* 5B Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1357, at 491 (4th ed. 2024) (noting it is "clear" that dismissals pursuant to a motion to dismiss are "generally without prejudice . . . because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected").

Second, the district court warned Unbridled that its claims would be dismissed *without prejudice* if it did not obtain counsel. It strikes us as fundamentally unfair to impose a punishment inconsistent with that which the court affirmatively and clearly articulated.

Accordingly, we reverse this portion of the district court's ruling because we conclude Unbridled's claims should have been dismissed without prejudice.

## IV. Conclusion

In sum, we affirm the district court's ruling dismissing Unbridled's claims for failure to obtain counsel. We also affirm the district court's entry of default judgment on the Riecher's counterclaim. However, we conclude the district court

erred in dismissing Unbridled's claims with prejudice, so we remand for the district court to enter judgment dismissing the claims without prejudice.

**AFFIRMED PART, REVERSED IN PART, AND REMANDED.**