*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

2018 UT 62

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SALT LAKE CITY CORPORATION,
*Appellee*,

*v.*

JORDAN RIVER RESTORATION NETWORK, JEFF SALT,
STATE RECORDS COMMITTEE, and
SALT LAKE CITY RECORDS APPEALS BOARD,
*Appellants.*

No. 20160098
Filed December 20, 2018

On Direct Appeal

Third Judicial District, Salt Lake City
The Honorable Andrew H. Stone
Case No. 100910873

Attorneys:

Margaret D. Plane, Catherine L. Brabson, for appellee
Salt Lake City Corporation

Karthik Nadesan, for appellants
Jordan River Restoration Network and Jeff Salt

Paul H. Tonks, Brent A. Burnett, for appellant
State Records Committee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    The Jordan River Restoration Network and its founder Jeff Salt (collectively, JRRN) filed a request with Salt Lake City Corporation (City) seeking every document related to the planned construction of a sports complex along the Jordan River. In the request, JRRN also asked the City to provide the documents at no charge. The City granted the document request, but denied JRRN's fee waiver request.

¶2    JRRN appealed the City's fee waiver denial to the City Records Appeals Board, which ruled in JRRN's favor. The City appealed that decision to the State Records Committee, which also ruled in favor of JRRN. The City then petitioned for judicial review of these administrative orders in the district court. The court ruled in favor of the City, concluding its fee waiver denial was reasonable.

¶3    JRRN challenges a number of the district court's procedural and substantive rulings. We conclude that the court conducted the review contemplated by the Government Records Access and Management Act (GRAMA). And while we find that the court did make some procedural errors, each was harmless. Accordingly, we affirm.

## BACKGROUND

¶4    JRRN is a coalition of individuals and organizations committed to restoring and preserving the Jordan River and the surrounding area. When JRRN's founder, Jeff Salt, learned of the City's plan to develop a sports complex along the river in Salt Lake County, he was concerned. He ultimately came to oppose the plan altogether.

¶5    To obtain information about the project, JRRN filed somewhere between five to twenty GRAMA requests with the City. The City provided "roughly 700 pages of records" to JRRN free of charge. However, JRRN did not find this information to be sufficient and filed an extensive and detailed GRAMA request on

March 10, 2010, that effectively sought every document related to the project. This is the request at issue in this case.[1]

¶6 In this request, JRRN asked for "all records in the City's possession that related to the Project," including "all agreements related to the Project, all correspondence and meeting information, all site selection analysis, all budgets, and all engineering plans." Some of the records sought had already been provided in response to JRRN's earlier requests.

¶7 JRRN also asked the City to waive any fee associated with producing the records. Salt justified the fee waiver request by including on the request form: "nonprofit organization, information for public good and education, not used for profit."

¶8 While the City agreed to provide JRRN with the documents it had requested, it denied the fee waiver request. By letter, the City informed JRRN that the estimated cost of providing the requested records would be two hundred dollars, and JRRN would have to pay that amount "before any response to the GRAMA request [could] begin." In the same letter, the City informed JRRN that it could appeal the City's decision to the City Records Appeals Board.[2]

¶9 JRRN did so. After a hearing, the City Records Appeals Board agreed with JRRN, and ordered the City to provide the requested records without charge. The Appeals Board also found that the request was "voluminous." The result of this finding was to extend the period of time in which the City was required to fulfill the request from ten business days to forty-five days from the date of the hearing.

---

[1] Accordingly, we reference and analyze the 2010 version of the Utah GRAMA statute throughout this opinion.

[2] The City cited Salt Lake City Code section 2.64.130(D) (2010), which provided that a "person who believes that there has been an unreasonable denial of a fee waiver . . . may appeal the denial in the same manner as a person appeals when inspection of a public record is denied." This mirrors the language in GRAMA section 63G-2-203(6)(a).

¶10 Both parties appealed to the State Records Committee. JRRN appealed the Appeals Board's finding that the request was voluminous and the City cross-appealed the determination that JRRN was entitled to a fee waiver. After a hearing, the Records Committee denied the City's cross-appeal.

¶11 The City filed a petition for judicial review in the district court of the orders of both the Appeals Board and the Records Committee.[3] After some initial motion practice followed by a significant period of inactivity, the parties eventually exchanged initial disclosures, engaged in fact discovery, and JRRN disclosed an expert witness. Both sides then filed motions for summary judgment.

¶12 JRRN argued that the City's petition for judicial review should be dismissed because it lacked standing to appeal the decision of its own City Records Appeals Board and its internal appeals process did not strictly comply with the GRAMA statute. The district court denied JRRN's motion. But the court partially granted the City's motion, entering summary judgment against JRRN on each of its counterclaims. However, the court found that there were "factual issues as to whether the City's decision to deny the fee waiver was reasonable." Accordingly, the court could not grant summary judgment on that claim and informed the parties that it would resolve the issue in a trial *de novo*.

¶13 The City then filed a motion asking the court to determine what the standard of review would be and which party would have the burden of proof at the trial *de novo*. In a written order, the court ruled that the burden of going forward would be on "Respondents [JRRN] as the party seeking relief in the form of a Court-ordered fee waiver from the City." The court stated that it would review "the City's decision to deny the fee waiver and not the decision or proceedings of the City Appeals Board and State Records Committee." The court further explained: "At this state of

---

[3] The City filed its petition pursuant to Utah Code sections 63G-2-404(1)(a) and 63G-2-701(6) and in accordance with 63G-2-404(3).

review, those proceedings are not relevant. The evidence cannot be limited to the record before the State Records Committee because there is not a record."

¶14 After conducting the trial *de novo*, the district court upheld the City's decision to deny the fee waiver. The court issued detailed Findings of Fact and Conclusions of Law, and ultimately held that "the City was entitled to charge for the costs of [fulfilling the GRAMA Request]."

¶15 JRRN then filed this appeal.[4] JRRN asserts that the court should have granted summary judgment against the City because it did not have standing to petition for judicial review, and its internal appeals procedure did not strictly comply with the GRAMA statute. JRRN also argues the court should not have granted summary judgment against it on its counterclaims. With regard to the bench trial, JRRN contends that the court: (1) should have limited its review to the administrative record rather than considering new evidence, (2) applied the wrong standard of review, (3) should have assigned the burden of proof to the City, and 4) misapplied the law.

¶16 We have jurisdiction to hear this case pursuant to Utah Code section 78A-3-102(3)(j).

**STANDARDS OF REVIEW**

¶17 JRRN raises a number of legal issues that we review for correctness, without any deference to the holdings of the trial court.

---

[4] JRRN appealed to the Utah Court of Appeals. The City then filed a motion to transfer the appeal to this court, asserting that "the Utah Supreme Court's most recent GRAMA decision clarified that it has jurisdiction to review the district court's decision arising from a petition for judicial review of the Utah State Records Committee's determination." Order of the Utah Court of Appeals, Case No. 20160098-CA (Sept. 13, 2017) (citing *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 15, 358 P.3d 1075). JRRN did not oppose the City's motion and the Court of Appeals granted it.

¶18 Regarding our review of the district court's ruling against JRRN on summary judgment, "the district court's legal conclusions and ultimate grant or denial of summary judgment are reviewed for correctness." *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312 (citing *View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2005 UT 91, ¶ 17, 127 P.3d 697); *see also Graham v. Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.*, 1999 UT App 136, ¶ 7, 979 P.2d 363 ("On appeal from a grant of summary judgment, we view the evidence in the light most favorable to the non moving party and affirm only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.").

¶19 JRRN's challenge to the district court's conclusion that the City had standing is a mixed question of law and fact. "[W]hen reviewing a lower court's standing determination we have stated that 'the question of whether a given individual or association has standing to request a particular relief is primarily a question of law, although there may be factual findings that bear on the issue.'" *Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 13, 148 P.3d 960 (quoting *Kearns–Tribune Corp. v. Wilkinson,* 946 P.2d 372, 373 (Utah 1997)). We have acknowledged a spectrum of deference for mixed questions, but have ultimately determined that "[l]aw-like mixed questions are reviewed de novo, while fact-like mixed questions are reviewed deferentially." *Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶¶ 10–11, 345 P.3d 1253. Since this is a mixed question of law and fact that is primarily a question of law, we review the district court's determination for correctness. *See id.* ¶ 11.

¶20 The determination of the appropriate standard of review is a question of law that we review for correctness. *See Drake v. Indus. Comm'n of Utah*, 939 P.2d 177, 181 (Utah 1997). The district court's allocation of the burden of proof is also a question of law that we review for correctness, *Beaver Cty. v. Utah State Tax Comm'n*, 916 P.2d 344, 357 (Utah 1996), with "no deference to the district court's legal conclusions." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 32, 299 P.3d 990 (citation omitted) (internal quotation marks omitted).

¶21   We review the district court's application of GRAMA for correctness. *State v. Graham*, 2006 UT 43, ¶ 16 n.7, 143 P.3d 268.

## ANALYSIS

¶22   This case presents questions about the procedural steps the district court took in hearing the case, and whether the court's ultimate decisions on the merits were correct. First, we address the court's summary judgment rulings. We then take up JRRN's challenges to the court's handling of the trial *de novo* regarding the standard of review, the burden of proof, and the scope of the review. Finally, we assess whether the court correctly applied GRAMA.

### I. SUMMARY JUDGMENT

#### *A. Standing*

¶23   JRRN claims the district court should have granted summary judgment against the City because the City lacked standing to petition for judicial review. JRRN reasons that the City should not have been allowed to appeal the decision of its own City Records Appeals Board, so the City lost standing after that point in the proceedings. Before addressing this argument, it is helpful to review the avenues GRAMA establishes for appealing the denial of a fee waiver request.

¶24   GRAMA permits a governmental entity to charge a reasonable fee to recoup the actual cost of providing records in response to a GRAMA request. UTAH CODE § 63G-2-203(1) (2010). But the statute encourages entities to fulfill a record request without charge when "releasing the record primarily benefits the public rather than a person," among other reasons. *Id.* § 63G-2-203(4)(a). This statutory language gives a government entity discretion—it *encourages* but does not mandate an entity to waive its costs when a request benefits the public.

¶25   But despite the discretionary nature of this provision, a requester who believes a government entity's fee waiver denial was unreasonable can challenge the denial in the same way a person appeals the denial of a record request. *Id.* § 63G-2-203(6)(a). First, the requester can appeal the denial to the entity's chief administrative officer. *Id.* § 63G-2-401. If the chief

administrative officer denies the request, the requester may appeal the denial to the State Records Committee, *id.* § 63G-2-403, or petition for judicial review in the district court, *id.* § 63G-2-404.

¶26 GRAMA also allows, but does not require, a political subdivision such as the City to adopt its own internal appeals process. *Id.* § 63G-2-701. The City did this, and created the City Records Appeals Board. *See* SALT LAKE CITY, UTAH, CODE § 2.64.140 (2010). Any appeal from an appeals board established by a political subdivision is to be by petition for judicial review to the district court. UTAH CODE § 63G-2-701(6).

¶27 A political subdivision may also provide an additional level of administrative review to the State Records Committee. *Id.* § 63G-2-701(5). Any party to that proceeding may petition for judicial review to the district court. *Id.* § 63G-2-404(1)(a).

¶28 In this case, the City had not designated a chief administrative officer, so JRRN's initial appeal was to the City Records Appeals Board. Both parties appealed from the Appeals Board to the Records Committee. After the Records Committee found in favor of JRRN, the City petitioned for judicial review in the district court.

¶29 JRRN argues that the City did not have standing to petition for judicial review because it should not have been allowed to challenge the decision of its own City Records Appeals Board. Essentially JRRN argues that, although it appealed part of the decision of the Appeals Board to the State Records Committee, the City should not have been allowed to do the same. And because the City should not have been permitted its intermediate appeal to the State Records Committee, its standing here is compromised. We reject this argument.

¶30 First, nothing in GRAMA prevents a city from appealing a decision made by a municipal-level appeals board. Section 701 governs a political subdivision's internal appeals process, if it adopts one. The provision discussing appeals from a municipal appeals board does not limit which parties are permitted to appeal. It directs: "Appeals of the decisions of the appeals boards

established by political subdivisions shall be by petition for judicial review to the district court."[5] UTAH CODE § 63G-2-701(6). The sentence does not contain a subject limiting who can appeal the decisions of municipal appeals boards.

¶31 This provision also instructs that a judicial review proceeding should be in accordance with sections 402 and 404 of GRAMA. *See id.* § 63G-2-701(6). Neither section prohibits the City from challenging a decision of the Appeals Board. *See id.* §§ 63G-2-402, -404. JRRN points to section 402(1) as limiting the City's right to appeal because it specifies that a "requester" may petition for judicial review if a chief administrative officer of a governmental entity denies a records request. But this case does not involve a denial from a chief administrative officer, so that section does not govern here.

¶32 And it makes sense that GRAMA allows only a requester to appeal a decision of a chief administrative officer but does not similarly limit who may appeal a decision of a municipal appeals board. A chief administrative officer is employed by and, in this context, speaks for the government entity. If GRAMA permitted a city to appeal a decision of its chief administrative officer, the city would effectively be appealing itself. But a municipal appeals board is different. Section 701 requires such a board to include one government employee and two public members. *See id.* § 63G-2-701(5). It is designed to have some independence from the governmental entity that created it. So it is logical that the legislature would permit a city to appeal from its municipal appeals board but not its chief administrative officer.

¶33 The plain language of GRAMA reveals that it does not limit which parties may appeal decisions of a municipal appeals board. And although the City established its internal appeals process, including the City Records Appeals Board, the City and

---

[5] This is correct unless, as is the case here, the political subdivision has provided for an additional level of administrative review to the records committee, to which the requester concurs. UTAH CODE § 63G-2-701(5).

the Appeals Board are not the same entity. *See, e.g.*, *Salt Lake City Corp. v. Haik*, 2014 UT App 193, ¶ 19, 334 P.3d 490. Accordingly, we conclude that the City had the right to appeal the decision of the City Records Appeals Board, as would any other aggrieved party.

¶34    Second, the City also has standing in this case because, although it challenged the decisions of both the Appeals Board and the State Records Committee, this matter arrived in the district court by way of the Records Committee. And the City's petition for review of a Records Committee decision is clearly permissible under the plain language of GRAMA. *See* UTAH CODE § 63G-2-404. The GRAMA statute allows "*[a]ny* party to a proceeding before the records committee [to] petition for judicial review by the district court of the records committee's order." *Id.* § 63G-2-404(1)(a) (emphasis added). This broad language plainly encompasses the City, and grants standing to the City here.

¶35    Accordingly, we conclude that the district court correctly determined the City had standing in this case.

*B. Strict Compliance with GRAMA*

¶36    JRRN claims that it should have been granted summary judgment because the City did not strictly comply with GRAMA when it "failed to provide JRRN with the right to appeal to its chief administrative officer" and "its appeal board did not consist of [any] members of its governing body." However, JRRN acknowledges that it did not make these arguments before the City Records Appeals Board or the State Records Committee. Oral Argument at 1:05:30, *Salt Lake City v. Jordan River Restoration Network*, No. 20160098 (2018), https://www.utcourts.gov/opinions/streams/index.php?court=sup. When the City petitioned for judicial review, JRRN argued for the first time in the district court that it was entitled to relief because the City did not strictly comply with GRAMA. Thus, JRRN failed to preserve this argument.

¶37    "Utah law requires parties to preserve arguments for appellate review by raising them first in the forum below—be it a trial court or an administrative tribunal." *Fuller v. Springville City*, 2015 UT App 177, ¶ 14, 355 P.3d 1063 (citation omitted); *see also*

*ABCO Enters. v. Utah State Tax Comm'n,* 2009 UT 36, ¶ 11, 211 P.3d 382. "The preservation doctrine provides that 'issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances.'" *Frito-Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 32, 222 P.3d 55 (quoting *Sullivan v. Utah Bd. of Oil, Gas & Mining,* 2008 UT 44, ¶ 14, 189 P.3d 63). The preservation doctrine applies when the issue raised on appeal could have been resolved in the administrative setting. *ABCO Enters.,* 2009 UT 36, ¶¶ 8–11. Thus, litigants may exhaust their administrative remedies and properly bring an appeal to a state district court but still be limited by the preservation doctrine regarding which issues they can raise before the court. *Frito-Lay*, 2009 UT 71, ¶ 32.

¶38   JRRN did not raise this issue until this case was before the district court, so the City had no opportunity to respond to or resolve its alleged non-compliance with GRAMA in the administrative setting. Accordingly, this issue was not preserved. Since the district court was acting as a reviewing court of the administrative proceedings below, this claim was not properly before it. However, the district court addressed this argument on the merits. But because the court ruled against JRRN on this claim, the error was harmless.

## C. JRRN's Counterclaims

¶39   JRRN makes a cursory argument that the district court erred in granting summary judgment against it on its counterclaims. JRRN couches this argument in its "right to file a GRAMA counterclaim," which has been "expressly recognized by the Court of Appeals as the sole means for a requester to obtain injunctive relief and recover attorney[s'] fees and costs when the governmental agency . . . is the party petitioning for judicial review."

¶40   The district court did not deny JRRN its right to bring its counterclaims. The district court assessed JRRN's counterclaims on the merits and ruled against JRRN in a detailed memorandum decision. The district court did not err because it did not, as JRRN suggests, bar JRRN from maintaining its counterclaims.

## II. THE TRIAL *DE NOVO*

¶41    JRRN challenges several of the procedures used by the district court at the trial *de novo* in this case. JRRN asserts that the court should have: (1) conducted a non-deferential review of the Records Committee's decision instead of reviewing the decision of the City for an abuse of discretion, (2) assigned the burden of proof to the City rather than JRRN, and (3) confined its review to the administrative record below rather than accepting new evidence. Finally, JRRN argues that the court's legal analysis was insufficient.

### A. Standard of Review

¶42    JRRN argues that the court should have conducted a non-deferential review of the State Records Committee's decision rather than reviewing the City's decision for an abuse of discretion. JRRN is not wrong, but it mischaracterizes the standard of review the district court employed.

¶43    When a petition for judicial review under GRAMA arrives in the district court after a proceeding in the Records Committee, the text of GRAMA does direct the court to review the Records Committee's decision. Section 403, which outlines the procedure the Records Committee follows when it receives a GRAMA appeal, directs the Committee to include in its order "a statement that any party to the proceeding before the records committee may appeal *the records committee's decision* to [the] district court."  UTAH CODE § 63G-2-403(12)(c) (2010) (emphasis added).

¶44    And section 404, which addresses judicial review in the district court, explains that "[a]ny party to a proceeding before the records committee may petition for judicial review by the district court *of the records committee's order*." *Id.* § 63G-2-404(1)(a) (emphasis added). This section also instructs a petitioner to include "a copy of the records committee order from which the appeal is taken" with its complaint. *Id.* § 63G-2-404(3)(b). This provision would not make sense if the Records Committee's order was irrelevant.

¶45 Thus, the plain language of the statute makes clear that when a petition for judicial review makes its way to the district court by way of the Records Committee, it is the Records Committee's decision that the district court should review.

¶46 However, the court does not give the Records Committee's decision any deference. GRAMA instructs the district court to "make its decision *de novo*." *Id.* § 63G-2-404(7)(a). *De novo* means "anew." De Novo, BLACK'S LAW DICTIONARY (10th ed. 2014). In practice, this means the district court must make its own, independent determination of whether the governmental entity's fee waiver decision was reasonable—with no deference to the Committee's decision. To do this, the court must make its own assessment of the City's denial. And that is precisely what the district court did here.

¶47 As JRRN points out, the district court did expressly rule that it was reviewing the decision of the City, not the State Records Committee. And that was incorrect. But in this context, that is a distinction without a difference. The district court conducted the review contemplated by GRAMA.

¶48 JRRN claims that the court incorrectly assessed the City's decision under an abuse of discretion standard. But this misunderstands the court's review.

¶49 Rather, the court analyzed the City's denial in light of the fee waiver provisions of GRAMA, which give the City great discretion in choosing whether to waive a fee. The provisions provide:

> (1) A governmental entity *may* charge a reasonable fee to cover the governmental entity's actual cost of providing a record.
>
> . . .
>
> (4) A governmental entity *may fulfill a record request without charge* and is *encouraged* to do so when it determines that:
>
> > (a) releasing the record primarily benefits the public rather than a person . . . .

UTAH CODE § 63G-2-203 (emphasis added).

¶50   Looking to the statute, the court assessed the City's decision as follows:

> If the City establishes that it considered the appropriate statutory factors . . . and did not rely on any impermissible policies or factors . . . then under the statute, the City's decision is entitled to deference . . . [and the] Court's role is limited to a review of whether the result was reasonable. If the Court determines the City's decision was an abuse of discretion, then it is not entitled to deference and the Court will determine *de novo* based on the evidence presented at trial whether the City's denial of the fee waiver was unreasonable pursuant to Utah Code § 63G-2-203(6)(a).

¶51   Although the court used the term "abuse of discretion," we note that this was not because the court had adopted that particular standard of review. Rather, the court was merely applying the statute governing the City's decision.

¶52   But the court's review was not entirely correct. We clarify that upon judicial review of a government entity's fee waiver denial, the ultimate question is not whether the entity abused its discretion, but whether its decision was reasonable. The court should make this decision *de novo*—meaning without deference to the Records Committee's decision, the Appeals Board's decision, or the governmental agency's decision.

¶53   When making this determination, a court should do as the court did here: view the entity's decision in the context of the governing statute. Here, that meant assessing whether the entity properly considered those circumstances under which GRAMA encourages a fee waiver: when releasing the record primarily benefits the public, the requester is the subject of the record, or the requester's legal rights are directly implicated by the information in the record and the requester is impecunious. *See* UTAH CODE § 63G-2-203(4). But this is not necessarily determinative.

¶54   The court should examine this and any other evidence it finds relevant to the reasonableness of the entity's denial. Here, the court properly considered the City's failure to contemplate

whether releasing the record benefitted the public, along with the time and effort required of the City to fulfill the request, the extreme breadth of the request, and the fact that some of the material requested duplicated records the City had already produced to JRRN.

¶55   Because the court found that the City had not considered whether releasing the record would primarily benefit the public, the court gave no deference to the City's decision. So the court ultimately conducted a *de novo* review to determine if the City's decision was reasonable in light of the GRAMA provisions regarding fee waivers. Accordingly, it conducted the review contemplated by GRAMA and any error it made as to the standard of review was harmless.

### B. Burden of Proof

¶56   The court's ruling that it was reviewing the City's decision rather than the order of the Records Committee did lead to an error regarding the assignment of the burden of proof. But that error is also harmless because the court concluded the City had proven its case by a preponderance of the evidence.

¶57   The court ruled that the burden of proof[6] was on the respondent, as "the party seeking relief in the form of a Court-ordered fee waiver from the City." However, it was JRRN that prevailed before the State Records Committee, and it was the City petitioning for a review of that decision. As the petitioner seeking a reversal of the decision below, the City should have borne the burden of proof.

---

[6] The nomenclature for evidentiary burdens can be confusing, as various courts and commentators have used prevalent terms in different ways. "[B]urden of proof" is a catchall term that encompasses both the burden of persuasion and the burden of production and generally refers to "[a] party's duty to prove a disputed assertion or charge." *Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 49 n.2, 133 P.3d 382 (second alteration in original) (citation omitted); *see also Burden of Proof*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The burden of proof includes both the *burden of persuasion* and the *burden of production*.").

¶58 The governing statute, Utah Code section 63G-2-404, does not expressly state which party bears the burden of proof in a judicial review proceeding. The nearest guidance section 404 provides is that the petition for judicial review shall be a complaint governed by the Utah Rules of Civil Procedure, and shall contain "a request for relief specifying the type and extent of relief requested," and "a statement of the reasons why the petitioner is entitled to relief." *Id.* § 63G-2-404(3).

¶59 In general, the law has long assigned the burden of proof to the petitioner, plaintiff, or appellant. *See Cox v. Laycock*, 2015 UT 20, ¶¶ 55, 58, 345 P.3d 689 (Lee, J., concurring); *see also State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92 ("Appellants bear the burden of proof with respect to their appeals . . . ."); *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (holding that parties seeking a remedy have the burden of producing evidence to buttress the requested award); *O'Rourke v. Utah State Tax Comm'n*, 830 P.2d 230, 232 (Utah 1992) (noting that on review of formal agency actions, "[t]he burden of proof lies with the petitioning party to establish a basis for the petition to be granted").

¶60 But this rule is not absolute. For instance, when a defendant appeals a criminal conviction from justice court to district court under Utah Code section 78A-7-118, the district court conducts a trial *de novo*, where "[t]he state bears the same burden of establishing a defendant's guilt . . . as it would had the case originated there." *Bernat v. Allphin*, 2005 UT 1, ¶ 31, 106 P.3d 707. And a respondent in a civil case generally bears the burden of proof when asserting affirmative defenses. *See, e.g., Seale v. Gowans,* 923 P.2d 1361, 1363 (Utah 1996) (stating that defendants have the burden of proof with respect to affirmative defenses); *Messick v. PHD Trucking Serv., Inc.*, 615 P.2d 1276, 1277 (Utah 1980) ("Accord and satisfaction is an affirmative defense and requires the party alleging it to meet the burden of proof as to every necessary element.").

¶61 Here, the GRAMA statute does not contain any language indicating that the burden of proof should be assigned to the non-moving party. And because the statute states that it is the decision of the State Records Committee under review, it makes sense that the party challenging the Records Committee's decision should

bear the burden of proof. While the Committee's decision is not entitled to deference, it still has significance. If the district court denies the petition, then the Committee's decision remains. In the absence of any statutory directive to the contrary, the general rule stands: the party seeking the remedy of overturning the Committee's decision must bear the burden of proof.

¶62   The City initiated this case in 2010 when it filed its Complaint in the district court. Thus, the City, as the petitioner and party seeking a reversal of the administrative order on review, should have borne the burden of proof.

¶63   However, this error did not affect the proceedings in the district court—other than to allow JRRN to present its evidence first and offer a rebuttal case. This is because, while the court did not formally assign the burden of proof to the City, in practice the court analyzed the case as if the City did have that burden. Before trial the district court ruled that it was the City's burden to "establish[] that it considered the appropriate statutory factors and factors consistent with the polices of GRAMA and did not rely on any impermissible polices or factors in making its decision." And after the bench trial, the court ultimately concluded that the City had established by a "preponderance of the evidence . . . that the decision to deny the requested fee waiver . . . was reasonable . . . ." *Salt Lake City Corp. v. Jordan River Restoration Network*, No. 100910873, Findings of Fact and Conclusions of Law, 7 (Dec. 8, 2015).

¶64   So, while the court did not assign the burden of proof to the City, the court analyzed the evidence as if the City did bear this burden. The court ultimately concluded that the City had proven its case by a preponderance of the evidence. Accordingly, any error on this point was harmless.

### C.  The Scope of the Review

¶65   JRRN's final procedural challenge relates to the scope of the district court's review. The district court conducted a complete trial *de novo*, in which it considered any admissible evidence offered by the parties. JRRN asserts the court should have limited its review to the record before the State Records Committee.

¶66 The text of the relevant provision does not provide a clear answer. The statute directs the district court to "make its decision *de novo*, but allow introduction of evidence presented to the records committee." UTAH CODE § 63G-2-404(7)(a) (emphasis added). JRRN argues that this language permits the district court to review only the evidence presented to the Records Committee. We disagree.

¶67 While the statute directs the district court to include evidence presented to the Records Committee in its review, it does not contain language requiring the exclusion of other evidence. JRRN's interpretation of the statutory text assumes a word that is absent: the provision does not say that the court should allow introduction of "only" the evidence presented to the Records Committee.

¶68 JRRN also points out that the relevant provision uses the term "*de novo*" without conjoining the word "trial." *See id.* In contrast, other statutes explicitly reference a "trial *de novo*." For example, the Administrative Procedures Act, which does not apply to GRAMA,[7] states that "district courts have jurisdiction to review by trial *de novo* all final agency actions resulting from informal adjudicative proceedings." *Id.* § 63G-4-402 (emphasis added).

¶69 This distinction is worth consideration. However, it is not dispositive. We have recognized that, in the context of judicial review of administrative action, even the complete phrase "trial *de novo*" can mean either: "(1) A complete retrial upon new evidence; [or] (2) a trial upon the record made before the lower tribunal." *Pledger v. Cox*, 626 P.2d 415, 416 (Utah 1981) (citations omitted); *Denver & R. G. W. R. Co. v. Pub. Serv. Comm'n*, 100 P.2d 552, 554–55 (Utah 1940).

---

[7] Section 63G-2-104 of GRAMA states that "Title 63G, Chapter 4, Administrative Procedures Act, does not apply to this chapter except as provided in Section 63G-2-603"—which deals with requests to amend a record on appeal. *See id.* § 63G-2-104.

¶70 Ultimately, the meaning of "*de novo*" in each statute is informed by the wording and context of the statute in which it appears and by "the nature of the administrative body, decision and procedure being reviewed." *Pledger*, 626 P.2d at 416–17. Viewing this provision in context, it is clear that the district court was correct in considering any admissible evidence at the bench trial in this case.

¶71 In proceedings before the Records Committee, discovery is prohibited. UTAH CODE § 63G-2-403(10)(a). But proceedings in the district court are governed by the Utah Rules of Civil Procedure. So, with some exceptions,[8] petitions for judicial review in the district court may proceed like any other civil case.

¶72 This means that discovery is permitted. *See* UTAH R. CIV. P. 26. The parties can engage in motion practice. *See id.* 7, 56. And if the case is not resolved earlier, the court will hold a bench trial where it will decide not only questions of law, but will "determine all questions of fact." UTAH CODE § 63G-2-404(7)(b).

¶73 GRAMA directs the court to "decide the issue at the earliest practical opportunity." *Id.* § 63G-2-404(7)(c). And nothing prevents the parties from forgoing discovery and stipulating to an expedited hearing in which the court reviews only the evidence before the Records Committee.

¶74 But cases involving judicial review of an administrative GRAMA decision are governed by the Utah Rules of Civil Procedure, and the parties may make use of those procedures. Here, the parties engaged in discovery—including JRRN disclosing an expert witness—and the case proceeded to a bench trial. The court was correct to proceed as it would in any other

---

[8] For example, GRAMA does not permit a jury trial. *Id.* § 63G-2-404(7)(b). And it contains some additional procedural requirements that are not found in the Utah Rules of Civil Procedure, like deeming the State Records Committee a necessary party and specifying particular information that must be contained in a petition. *Id.* § 63G-2-404(1)(c), (3).

civil case, including considering any admissible evidence presented by the parties.[9]

### D. Application of the Law

¶75   Finally, JRRN alleges that the district court should have weighed "the public's constitutional right of access" against "the government's burden in fulfilling the request" in its legal analysis. However, JRRN relies on law specific to requests for records, not fee waiver requests.

¶76   JRRN supports its argument with two cases. In the first, *Deseret News Publishing Co. v. Salt Lake County*, 2008 UT 26, 182 P.3d 372, we analyzed Salt Lake County's denial of a records request, not a fee waiver request. *See id.* ¶ 1. JRRN quotes passages from *Deseret News* in which we discussed the foundational policies of the GRAMA statute. *See id.* ¶¶ 13–14. We noted there that GRAMA strikes a balance between "the right of access to information concerning the conduct of the public's business and the right of individual privacy concerning personal information acquired by governmental entities." *Id.* ¶ 13; *see also* UTAH CODE § 63G-2-102(1). In *Deseret News*, we did not interpret GRAMA to require district courts to enter into a balancing analysis in the context of fee waiver requests.

¶77   In the second case, *Graham v. Davis County Solid Waste Management & Energy Recovery Special Service District*, 1999 UT App 136, 979 P.2d 363, the court of appeals reviewed, among other things, a district court's upholding of a Davis County fee

---

[9]  We recognize that the interaction between our preservation requirements and the Utah Rules of Civil Procedure may create a hybrid proceeding in this type of case. Our preservation rules require a party to raise a claim or issue in the administrative proceeding to preserve it in district court. However, in a GRAMA case parties may conduct discovery for the first time in the district court, and evidence gathered in discovery may be admissible in the district court case even though it was not presented in the underlying administrative proceeding. But such evidence will be admissible only if it is relevant to a preserved issue.

waiver request denial. *See id.* ¶¶ 1–7. In so doing, the court discussed GRAMA's balancing of "the public's right to access government documents against the government's interest in operating free from unreasonable and burdensome records requests." *Id.* ¶ 22. The court noted that "the Legislature . . . also restricted access to public records by allowing agencies to impose fees for the production of records in limited instances." *Id.* ¶ 23.[10]

¶78 Although allowing governmental entities to impose fees is one way that GRAMA balances the government's interests and the public's right of access, GRAMA does not require for fee waivers the same balancing analysis that applies in the context of records requests.

¶79 In assessing a request for records that are private or protected, GRAMA instructs government entities to weigh the interests favoring access against the interests favoring restriction. *See* UTAH CODE § 63G-2-201(5)(b)(ii). If the government entity denies the records request, and the requester petitions for judicial review, section 63G-2-404 directs district courts to "weigh[] . . . the various interests and public policies *pertinent to the classification and disclosure or nondisclosure*, [and] order the disclosure of information properly classified as private, controlled, or protected if the interest favoring access outweighs the interest favoring restriction of access." *Id.* § 63G-2-404(8)(a) (emphasis added).

¶80 But the code does not require the same substantive analysis, either from the government entity or the reviewing court, in determining whether to grant or deny a fee waiver

---

[10] JRRN cites *Graham* for the proposition that, in addition to weighing the right of access against the burden on the government, a governmental entity must prove: "(1) it was required to compile records in a form other than that maintained by the City; [and] (2) it was impossible to allow JRRN to obtain the records on its own." But in *Graham*, the court of appeals focused on the amount an agency should be allowed to charge in compilation fees. *Graham*, 1999 UT App 136, ¶¶ 19–28. Here, our focus is different. We address when an agency may charge a fee and when it should waive its cost entirely.

request. As we have discussed, GRAMA has provisions specific to charging and waiving fees. And while an appeal of a fee waiver denial follows the same procedure as an appeal of a record request denial, that does not mean the same substantive law applies. As JRRN states in its brief, "[t]he reasonableness of the [entity's] order must be determined in light of the statutory setting in which it operates." (Quoting *Utah Dep't of Admin. Servs. v. Pub. Serv. Comm'n*, 658 P.2d 601, 611 (Utah 1983).)

¶81 Here, the district court properly assessed the reasonableness of the City's decision in light of the relevant fee waiver statute. The court recognized that section 63G-2-203 "permitted [the City] to charge fees for retrieving and copying the requested documents," but encouraged it to fulfill record requests without charge when the request primarily benefits the public.

¶82 The court found that the City incorrectly had not considered this provision, and factored that into its ultimate ruling in this case. The court also considered any other evidence relevant to the question of reasonableness. It found that JRRN's request:

> required substantial efforts to "compile" documents as defined in *Graham*. The request's breadth would require extracting many documents from disparate larger sources. The effort within Public Works required many hours and interrogating many employees as to the files they possessed. It would not have been feasible to allow JRRN the access needed to gather the documents themselves.

The court also found that "the breadth of the request . . . was unreasonably large," that "full compliance with the request would have required many more hours of employee time compiling and copying," and that the "request [was] not tailored to [this] issue, but rather appear[ed] calculated to require production of every conceivable document concerning the project."

¶83 Despite finding that JRRN's "purpose was to primarily benefit the public," the court concluded that the City's "decision to deny the requested fee waiver . . . was reasonable given the

voluminous nature of the request and the effort necessary to compile the requested documents."

¶84 The district court did not also need to weigh competing interests pertinent to disclosure and nondisclosure. While fees do affect the public's access to documents, the legislature has identified different considerations specific to the fee waiver context. The district court correctly identified and applied them here.

## CONCLUSION

¶85 The district court correctly concluded that the City had standing to petition for judicial review. And while the court should have conducted a *de novo* review of the decision of the State Records Committee, its error was harmless because that decision is not entitled to deference. It was necessary for the court to make its own assessment of the governmental entity's decision, which it did.

¶86 At trial, the court correctly considered any admissible evidence and applied the specific provisions of GRAMA governing fee waivers. While the court's ruling on the burden of proof was incorrect, that error was harmless because the court ultimately found that the City proved the reasonableness of its decision by a preponderance of the evidence.

¶87 Accordingly, we affirm.

———————